**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CAMDEN MCCLELLAND, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MICHIGAN STATE UNIVERSITY,

Defendant.

No.

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff, Camden McClelland ("Plaintiff"), brings this Class Action Complaint ("Complaint") against Michigan State University ("MSU" or "Defendant"), as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, and upon information and belief and his counsel's investigation as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff and members of the proposed Class (as defined below) bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII"[1] or "Private Information") and whose Private Information was impacted in a data breach (the "Data Breach" or the "Breach").

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.1. At a minimum, it includes all information that on its face expressly identifies an individual.

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3. Defendant is a public university based in Michigan, offering undergraduate, graduate, and professional degree programs while conducting research across diverse academic fields.

4. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. On or around November 1, 2026, notorious cybercriminal group "BYOD" disclosed in a blog post to its dark web site that it had successfully executed a cyber attack against Defendant.[2]

6. BYOD is a newly emerging, aggressive ransomware group with victims in the education, financial services, government and defense, manufacturing, professional services, retail and e-commerce, and technology industries.[3]

7. Upon information and belief, the Private Information exfiltrated by BYOD in the Data Breach from Defendant's network and systems includes highly sensitive PII.

8. Defendant failed to take precautions designed to keep individuals' Private Information secure.

---

[2] https://therecord.media/michigan-state-university-byod-gang-cyber-incident (last visited Nov. 3, 2026); *see also* https://www.breachsense.com/breaches/michigan-state-university-data-breach/ (last visited Nov. 3, 2026); https://www.dexpose.io/byod-ransomware-targets-michigan-state-university/ (last visited Nov. 3, 2026).

[3] https://socradar.io/free-tools/ransomware-intelligence/groups/byod (last visited Nov. 3, 2026).

9. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

11. Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

12. Upon information and belief, Plaintiff's Private Information is available on the dark web as a result of the Data Breach.

13. As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries, including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate

information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

15. Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals against Defendant for: negligence; negligence *per se*; breach of implied contract; and unjust enrichment.

16. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

17. Plaintiff is a natural person and a resident of McDonald, Pennsylvania. He is domiciled in Pennsylvania, where he intends to remain.

18. Defendant is a Michigan-based university, with its principal place of business located at 426 Auditorium Road, East Lansing, Michigan 48824.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; at least one member of the proposed Class is a citizen of a state other than Michigan, namely, Plaintiff, a citizen of Pennsylvania; and there are more than 100 putative Class Members.

20. This Court has personal jurisdiction over Defendant because it is headquartered in Michigan, regularly conducts business in Michigan, and has sufficient minimum contacts with Michigan. Defendant's principal place of business is in this District.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### A. Defendant's Business

22. Defendant is a public university based in Michigan, offering undergraduate, graduate, and professional degree programs while conducting research across diverse academic fields.

23. In connection with the services Defendant provides, individuals, including Plaintiff and Class Members, were required to provide Defendant with sensitive and confidential Private Information.

24. The information held by Defendant at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

25. Upon information and belief, and through its privacy policies,[4] Defendant made promises and representations to Plaintiff and Class Members that the Private Information collected would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it.

---

[4] https://msu.edu/privacy (last visited Nov. 3, 2026); *see also* https://tech.msu.edu/about/guidelines-policies/msu-institutional-data-policy/ (last visited Nov. 3, 2026).

26. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

27. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

28. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep individuals' Private Information safe and confidential.

29. Defendant had obligations under the FTC Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

30. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

31. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

B. **The Data Breach**

32. On or around November 1, 2026, notorious cybercriminal group "BYOD" disclosed in a blog post to its dark web site that it had successfully executed a cyber attack against Defendant.[5] Indeed, a spokesperson for Defendant publicly acknowledged the Data Breach, telling Recorded Future News that Defendant "became aware of suspicious cyber activity and immediately began investigating the matter" in early October 2026.[6]

33. BYOD is a newly emerging, aggressive ransomware group with victims in the education, financial services, government and defense, manufacturing, professional services, retail and e-commerce, and technology industries.[7]

34. Upon information and belief, the Private Information exfiltrated by BYOD in the Data Breach from Defendant's network and systems includes highly sensitive PII.

35. Defendant failed to take precautions designed to keep individuals' Private Information secure.

36. Defendant also had obligations under the FTC Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

37. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[5] https://therecord.media/michigan-state-university-byod-gang-cyber-incident (last visited Nov. 3, 2026); *see also* https://www.breachsense.com/breaches/michigan-state-university-data-breach/ (last visited Nov. 3, 2026); https://www.dexpose.io/byod-ransomware-targets-michigan-state-university/ (last visited Nov. 3, 2026).

[6] https://therecord.media/michigan-state-university-byod-gang-cyber-incident (last visited Nov. 3, 2026).

[7] https://socradar.io/free-tools/ransomware-intelligence/groups/byod (last visited Nov. 3, 2026).

38. Indeed, Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

39. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

40. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of Private Information.

41. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

42. Upon information and belief, Plaintiff's Private Information, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals such as BYOD that commit cyber-attacks of this type.

**C. Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information.**

43. In connection with the services Defendant provides, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendant.

44. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its services.

45. By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

46. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

47. Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

48. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D. Defendant Knew or Should Have Known of the Risk of a Cyber Attack Because Institutions in Possession of Private Information Are Particularly Susceptible to Cyber Attacks.**

49. Data thieves regularly target institutions like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

50. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting institutions like Defendant that collect and store Private Information and other sensitive information, preceding the date of the Data Breach.

51. In the third quarter of the 2023 fiscal year alone, 733 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised.[8]

52. In 2024, these numbers held steady - a total of 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records (i.e., a 211% increase year over year).[9]

53. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

54. Indeed, Defendant was acutely aware of the risk of cyber attacks, as Defendant experienced a prior data breach incident in 2020 at the hands of another notorious ransomware gang named "NetWalker."[10] Accordingly, Defendant knew that it was susceptible to cyber attacks.

55. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), and those transmitted to third-party vendors' servers, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[8] *See Q3 2023 Data Breach Report: Identity Theft Resource Center Reports Data Compromise Record with Three Months Left in the Year*, Identity Theft Resource Center, https://www.idtheftcenter.org/post/q3-2023-data-breach-report-itrc-reports-data-compromise-record-with-three-months-left-in-year/ (last visited Nov. 3, 2026).

[9] *2024 Data Breach Repor*t, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited Nov. 3, 2026).

[10] https://www.bleepingcomputer.com/news/security/michigan-state-university-network-breached-in-ransomware-attack/ (last visited Nov. 3, 2026).

56. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

57. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

58. This includes the significant costs in time and expense imposed on Plaintiff and Class Members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

**E. Data Breaches Are Preventable**

59. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[11]

60. To prevent and detect cyber-attacks and/or ransomware attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

[11] *See How to Protect Your Networks from RANSOMWARE*, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[12]

61. To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

[12] *Id.* at 3-4.

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[13]

62. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information.

63. Given that Defendant was storing the sensitive Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

---

[13] *See Human-operated ransomware attacks: A preventable disaster* (Mar 5, 2020), available at*:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

64. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and, upon information and belief, the exposure of the Private Information of Plaintiff and Class Members.

**F. Defendant Fails to Comply with FTC Guidelines**

65. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

66. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[14]

67. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

68. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require

---

[14] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Nov. 3, 2026)
[15] *Id.*

complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

69. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect personal data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA" or "FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

70. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

71. Defendant failed to properly implement basic data security practices.

72. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class Members; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private

Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**G. Defendant Owed Plaintiff and Class Members a Duty to Safeguard Their Private Information.**

74. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession, and in the possession of its third-party vendors, from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols, and those of its third-party vendors, adequately protected the Private Information of Class Members.

75. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, and in its third-party vendors possession, including adequately training employees and others who accessed Private Information within computer systems on how to adequately protect Private Information.

76. Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

77. Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

78. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

### H. The Data Breach Increases Plaintiff's and Class Members' Risk of Identity Theft.

79. The unencrypted Private Information of Plaintiff and Class Members will end up (and likely has already ended up) for sale on the dark web, as that is the *modus operandi* of hackers such as BYOD.

80. Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members.

81. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

82. Plaintiff's and Class Members' Private Information that Defendant stored and maintained is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Class Members and to profit off their misfortune.

83. One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[16]

---

[16] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule

84. With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

85. The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

86. The existence and prevalence of "Fullz" packages means that the Private Information stolen from the Data Breach can easily be linked to the unregulated data (like insurance information) of Plaintiff and the other Class Members.

87. Thus, even if certain information was not stolen in the Data Breach, criminals can still easily create a comprehensive "Fullz" package.

88. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

89. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members because of the Data Breach.

---

account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/ (last visited Nov. 3, 2026).

90. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

91. Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit from their misfortune.

**I. Loss of Time to Mitigate the Risk of Identity Theft and Fraud**

92. As a result of the recognized risk of identity theft, when a data breach occurs and an individual learns that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud.

93. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

94. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

95. Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in

which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[17]

96. Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[18]

97. And for those Class Members who experience actual identity theft and fraud, as the GAO Report noted, they will face "substantial costs and time to repair the damage to their good name and credit record."

**J. Diminution of Value of Private Information.**

98. Private Information is valuable property.[19] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

99. Upon information and belief, the Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data

---

[17] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf (last visited Nov. 3, 2026).

[18] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited Nov. 3, 2026).

[19] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited Nov. 3, 2026) ("GAO Report").

breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. Upon information and belief, the information stolen in the Data Breach is difficult, if not impossible, to change.

100. This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[20]

101. Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[21]

102. An active and robust legitimate marketplace for Private Information also exists. The global data broker market size was valued at USD 278.0 billion in 2024 and is projected to grow to USD 307.3 billion in 2026.[22] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[23] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60 a year.[24]

103. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and

---

[20] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Nov. 3, 2026).

[21] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Nov. 3, 2026).

[22] *See* https://www.grandviewresearch.com/industry-analysis/data-broker-market-report (last visited Nov. 3, 2026).

[23] https://datacoup.com/ (last visited Nov. 3, 2026).

[24] https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Nov. 3, 2026).

diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

104. The fraudulent activity resulting from the Data Breach may not come to light for years.

105. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

106. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

107. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

### K. The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary.

108. Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank

accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or lines of credit; or filing false unemployment claims.

109. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that her or his Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

110. Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

111. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear, but for Defendant's failure to safeguard their Private Information.

**L. Loss of the Benefit of the Bargain**

112. Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant for the provision of its services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the service and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what was reasonably expected to be received under the bargains struck with Defendant.

**M. Plaintiff's Experience**

113. Plaintiff is a former student of Defendant, and provided his Private Information to Defendant in exchange for the services Defendant provides.

114. Upon information and belief, Defendant maintained Plaintiff's Private Information before, during, and after the Data Breach. Accordingly, Plaintiff is a victim of the Data Breach.

115. Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

116. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach. Plaintiff has spent significant time verifying the legitimacy of the Data Breach and on other necessary mitigation efforts, valuable time he otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

117. As a result of the Data Breach, Plaintiff fears for his personal financial security and is experiencing uncertainty over what Private Information was revealed in the Data Breach. He is experiencing feelings of anxiety, stress, and fear because of the Data Breach and the invasion of his privacy. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

118. As a result of the Data Breach, Plaintiff is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

119. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

120. Plaintiff suffered actual injury from having his Private Information stolen as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant maintained belonging to Plaintiff; (b) violation of his privacy rights; (c) the theft of his Private Information; and (d) present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

121. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of his life because his Private Information was stolen.

## CLASS ACTION ALLEGATIONS

122. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of himself and the following Class:

> All individuals whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Class").

123. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

124. Plaintiff reserves the right to amend the definition of the Class or add a class or subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

125. **Ascertainability**: All members of the proposed Class are readily ascertainable from information in Defendant's custody and control.

126. **Numerosity**: The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, upon information and belief, the Class includes at least thousands of individuals whose Private Information was compromised in this Data Breach. The Class is readily identifiable within Defendant's records.

127. **Typicality**: Plaintiff's claims are typical of those of the other Class Members because Plaintiff, like every other Class member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

128. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to Class Members and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

129. **Commonality and Predominance**: Common questions of law and fact exist as to all Class Members and predominate over any questions affecting solely individual Class Members. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, are the following:

a. Whether and to what extent Defendant has a duty to protect the Private Information of Plaintiff and Class Members;

b. Whether Defendant has respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant has respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct; and

h. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

130. **Superiority**: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that thousands of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large institutions, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

131. Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief appropriate under Rule 23(b)(2). Plaintiff seeks measures reasonably necessary to protect the Private Information that Defendant continues to maintain and to prevent further unauthorized access.

## CAUSES OF ACTION

### COUNT I
**Negligence**
***(On behalf of Plaintiff and the Class)***

132. Plaintiff hereby repeats and realleges paragraphs 1 through 131 of this Complaint and incorporates them by reference herein.

133. Defendant required individuals, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing its services.

134. Defendant gathered, stored, and transmitted the Private Information of Plaintiff and Class Members as part of its business of soliciting its services, which solicitations and services affect commerce.

135. Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

136. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

137. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

138. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, those of third-party vendors, and the personnel responsible for them, adequately protected the Private Information.

139. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and Class Members entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

140. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

141. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

142. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, (a) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information; (b) failing to adequately monitor the security of its networks and systems, and those of its third-party vendors; and (c) allowing unauthorized access to Class Members' Private Information.

143. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

144. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

145. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

146. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class Members, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

147. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

148. Plaintiff and Class Members had no ability to protect their Private Information that was in, and likely remains in, Defendant's possession.

149. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

150. Defendant's duty extended to protecting Plaintiff and Class Members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement

(Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

151. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

152. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

153. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

154. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including,

but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

155. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

156. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

## COUNT II
## Negligence *Per Se*
## *(On behalf of Plaintiff and the Class)*

157. Plaintiff hereby repeats and realleges paragraphs 1 through 131 of this Complaint and incorporates them by reference herein.

158. Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair, reasonable, and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

159. Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

160. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

161. The injuries to Plaintiff and Class Members resulting from the Data Breach were directly and proximately caused by Defendant's violation of the FTC Act and other statutes as describe herein.

162. Plaintiff and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm this statute was intended to guard against.

163. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

164. The injuries and harms suffered by Plaintiff and Class Members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

165. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injuries and are entitled to compensatory and consequential damages in an amount to be proven at trial.

## COUNT III
**Breach of Implied Contract**
***(On behalf of Plaintiff and the Class)***

166. Plaintiff hereby repeats and realleges paragraphs 1 through 131 of this Complaint and incorporates them by reference herein.

167. Plaintiff and the Class entrusted their Private Information to Defendant in exchange for the services Defendant provides. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

168. At the time Defendant acquired the Private Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Private Information and not take unjustified risks when storing the Private Information.

169. Implicit in the agreements between Plaintiff and Class Members and Defendant to provide Private Information was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

170. Plaintiff and the Class would not have entrusted their Private Information to Defendant had they known that Defendant would make the Private Information internet-accessible, not encrypt sensitive data elements, and not delete the Private Information that Defendant no longer had a reasonable need to maintain.

171. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

172. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

173. The losses and damages Plaintiff and Class Members sustained as described herein were the direct and proximate result of Defendant's breach of the implied contracts with them.

## COUNT IV
**Unjust Enrichment**
***(On behalf of Plaintiff and the Class)***

174. Plaintiff hereby repeats and realleges paragraphs 1 through 131 of this Complaint and incorporates them by reference herein.

175. Plaintiff and Class Members conferred a benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security.

176. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's and Class Members' retained data and used Plaintiff's and Class Members' Private Information for business purposes.

177. Defendant failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

178. Defendant acquired the Private Information through inequitable means as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

179. If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to Defendant.

180. Plaintiff and Class Members have no adequate remedy at law.

181. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

182. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

183. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

184. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

185. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V
### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.911, *ET SEQ.*)
### ***(On Behalf of Plaintiffs and the Class)***

186. Plaintiff hereby repeats and realleges paragraphs 1 through 131 of this Complaint and incorporates them by reference herein.

187. Plaintiffs are authorized to bring this claim under Mich. Comp. Laws § 445.911.

188. The MCPA, Mich. Comp. Laws § 445.911, *et seq.*, prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade of commerce[.]" Mich. Comp. Laws § 445.903(1).

189. As described herein, MSU has engaged in the following unfair, unconscionable, and deceptive trade practices that are made unlawful under the below subsections of the MCPA, Mich. Comp. Laws § 445.903(1):

> (c) Representing that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that it does not have;
>
> (e) Representing that goods or services are of a particular standard, quality, or that goods are of a particular style or mode, if they are of another;

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; and

(cc) Failing to reveal facts that are material to the transaction in light of the representations of fact made in a positive manner.

190. MSU made affirmative representations, including that it would ensure the highly sensitive personal information it maintained was secure and would prevent unauthorized access or disclosures of Class Members' Private Information. MSU failed to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failed to disclose that it did not have adequately robust computer systems and security practices to safeguard employee PII; failed to take standard and reasonably available steps to prevent the Data Breach; failed to properly train its staff and employees on proper security measures; and failed to provide Class Members prompt and adequate notice of the Data Breach.

191. MSU omitted and actively concealed material facts regarding its inadequate security policies and practices from the Class and withheld and continues to withhold information regarding the full nature and extent of the Data Breach.

192. Had MSU disclosed that its data systems lacked the almost universal safeguards described above, the Class would not have allowed MSU to collect and maintain their Private Information.

193. MSU's deceptive acts or practices in the conduct of commerce include, but are not limited to:

a. Failing to implement and maintain reasonable security and privacy measures to protect Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Class Members' Private Information, including but not limited to duties imposed by the FTC Act, which were the direct and proximate causes of the Data Breach;

d. Misrepresenting that it would protect the privacy and confidentiality of Class Members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that it would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Class Members' Private Information;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Class Members' Private Information;

g. Omitting, suppressing, and concealing the material fact that it did not comply with the common law, statutory, and self-imposed duties pertaining to the security and privacy of Class Members' Private Information; and

h. Failing to promptly and adequately notify Class Members that their Private Information was accessed by unauthorized actors in the Data Breach.

194. MSU is engaged in, and its acts and omissions affect, trade and commerce. MSU's relevant acts, practices, and omissions complained of in this action were done in the course of MSU's business of marketing, offering for sale, and selling goods and services throughout the State.

195. MSU had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of Class Members' Private Information. This exclusive knowledge includes, but is not limited to, knowledge that MSU did not have adequately robust computer systems and security practices to safeguard client PII; its failure to take standard and reasonably available steps to prevent the Data Breach; its failure to train its staff and employees on proper security measures; its failure to properly monitor the computer network

and systems that housed Private Information; and that Class Members' Private Information and other MSU data was vulnerable.

196. MSU failed to disclose, and actively concealed, the material information it had regarding MSU's deficient security policies and practices, and regarding the security of the sensitive Private Information.

197. MSU also had a duty to disclose that material information that it had because, *inter alia*, it had exclusive knowledge of the information, it actively concealed the information, and because MSU was in a fiduciary position by virtue of the fact that MSU collected and maintained Class Members' Private Information.

198. MSU's representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of MSU's security and its ability to protect the confidentiality of Class Members' Private Information.

199. Had MSU disclosed to Class Members that its data systems were not secured and, thus, vulnerable to attack, MSU would have been unable to continue in business without adopting reasonable data security measures, as reflected in laws, such as the FTC Act.

200. MSU generated revenue by way of Class Members paying or generating payments when entering transactions with MSU where MSU was the direct beneficiaries of these payments. MSU's services were of a lesser quality and value than MSU represented in that MSU did not take reasonable measures to safeguard its students and/or employees personal information. In reliance on MSU's misrepresentations about its products and services, Class Members entered into transactions with MSU that they would not have, or for which Class Members would have paid less but for MSU's representations.

201. The injuries suffered by Class Members greatly outweigh any potential countervailing benefit to consumers or to competition and are not injuries that Class Members should have reasonably avoided.

202. The damages, ascertainable losses and injuries, including to their money or property, suffered by Class Members as a direct result of MSU's deceptive acts and practices as set forth include, without limitation: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in MSU's possession and is subject to further unauthorized disclosures so long as MSU fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainer of the lives of Class Members; and (vii) the diminished value of MSU's services they received.

203. Class Members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring MSU from disclosing their Private Information without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A. For an order certifying the Class, as defined herein, and appointing Plaintiff and his Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii. requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive information security program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and security checks;

xi. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xii. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves; and

xiii. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct an attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment.

D. For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined by a jury at trial;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: November 3, 2026

Respectfully submitted,

By: */s/ Gregory A. Mitchell*
Gregory A. Mitchell (P68723)
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
gam@millerlawpc.com

Leanna A. Loginov
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
T: (305) 479-2299
lloginov@shamisgentile.com

Casondra Turner
**MILBERG, PLLC**
260 Peachtree Street, NW
Suite 2200
Atlanta, Georgia 30303
Tel: (866) 252-0878
Fax: (771) 772-3086
cturner@milberg.com

*Counsel for Plaintiff and the Putative Class*